IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                            Case Nos.:  3:10cr67/RV/EMT
                                                           3:13cv547/RV/EMT

ALEJANDRINO POPOCA

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 329).   The Government filed a response (ECF No. 344), and Defendant filed a reply (ECF No. 348).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

On May 25, 2010, Defendant Alejandrino Popoca and three others were charged in a criminal complaint with drug and weapons offenses (ECF No. 1). Defendant Popoca retained attorney Christopher Rabby to represent him (ECF No. 21), and shortly thereafter he and five others were charged in a six-count indictment with drug, weapons, and immigration offenses (ECF No. 34).   Popoca was charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine ("Count One"); possession with intent to distribute 500 grams or more of cocaine on a date certain ("Count Two"); using, carrying, or possessing a firearm during and in relation to a drug trafficking crime ("Count Three"); and being an illegal alien in possession of a firearm ("Count Four") (*id*.).

Prior to trial, Defendant, through his counsel, filed a motion to disqualify the Assistant United States Attorney due to alleged irregularities in the provision of discovery, which the court denied (ECF Nos. 113, 114).   Defendant also filed a Motion to Suppress evidence seized from the truck in which he was riding at the time of his arrest (ECF No. 118).   The court denied the motion as untimely and without a basis in law (ECF No. 122).   Defendant additionally filed a Motion in

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

Limine to exclude photographic lineups that had been used to identify some of the Defendants, and this motion was also denied (ECF Nos. 119, 124, 139).

Defendant Popoca exercised his right to a jury trial along with co-defendants Juan Jalomo-Ruiz, and Popoca's nephew, Francisco Torres-Rodriguez (ECF Nos. 254, 255, 258).   On the third day of trial, by special verdict the jury found Popoca guilty of conspiring to distribute at least five kilograms of cocaine, possession with intent to distribute of at least 500 grams of cocaine, and the firearm offenses charged in Counts Three and Four (ECF No. 146).

Defendant's Presentence Investigation Report ("PSR") described Popoca as the leader in a cocaine distribution ring operating in the Northern District of Florida and noted that the remaining co-defendants were drivers/couriers or local cocaine distributors (ECF No. 185, PSR ¶¶ 38, 39).   Defendant and co-defendants Juan Jalomo-Ruiz and Torres-Rodriguez were arrested when they traveled together to Pensacola to investigate the purported disappearance of another of Popoca's couriers.   Information was obtained from numerous individuals who had contact or dealings with the conspiracy (ECF No. 185 at 7–10).   This information was used to determine the scope of the conspiracy, as well as the roles of the participants and the quantity of drugs attributable to each defendant based on the number of deliveries.

Popoca was held accountable for 37 kilograms of cocaine (ECF No. 185, PSR ¶¶ 40, 58).   The base offense level for offenses involving between 15 and 50 kilograms of cocaine is 34.   After a four-level adjustment for his leadership role in the offense and a two-level adjustment for obstruction of justice, Defendant's total offense level was 40 (ECF No. 185, PSR ¶¶ 58–67).   Popoca, who was 33 years old at the time his PSR was prepared, had no criminal history, so his criminal history category was I (ECF No. 185, PSR ¶¶ 69–71).   He faced a mandatory minimum term of ten-years imprisonment on Count One up to a maximum of life, a minimum of five years on Count Two up to a maximum of 40 years, a mandatory minimum five-year term on Count Three, and a maximum term of ten years on Count Four (ECF No. 185, PSR ¶ 103).   The applicable guidelines range was 292 to 365-months imprisonment as to Counts One, Two, and Four, followed by a consecutive 60-month term on Count Three (ECF No. 185, PSR ¶ 104).

Sentencing, at which Defendant continued to maintain his innocence, took place on December 8, 2010 (ECF No. 285 at 119).   After hearing testimony and argument about objections to drug quantity and the various adjustments, the court sentenced Defendant to a term of 360-months imprisonment.   This sentence was comprised of 300 months on Counts One and Two, 120 months on Count Four to

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

run concurrently with the sentence imposed on Counts One and Two, and a mandatory consecutive 60-month term of imprisonment on Count Three (ECF Nos. 189, 224, 285 at 121).   Defendant's term of incarceration was to be followed by concurrent terms of supervised release, as follows: five years on Count One, four years on Count Two, and three years on Counts Three and Four (ECF No. 285 at 122).

Defendant appealed, represented by retained counsel Clifford L. Davis (ECF No. 232).   He raised three issues.   Popoca argued that the jury instructions and the Government's closing argument constructively amended the indictment, that the evidence was insufficient to support his convictions on Counts Three and Four, and that the district court violated Fed. R. Crim. P. 32(i)(1)(C) and his due process rights when it relied on evidence outside the PSR in enhancing his sentence for obstruction of justice and in calculating drug quantity (ECF No. 306 at 5).   The Eleventh Circuit affirmed Defendant's convictions and sentence, finding, without discussion, that his claims lacked merit (ECF No. 306 at 6–7).

Defendant timely filed the instant motion to vacate in which he raises eight grounds for relief.   The Government opposes the motion in its entirety.

# ANALYSIS

## General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.

*Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d at 1343 (quotation omitted).    Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.    *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).    An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.   *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390

(2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").    Counsel's performance must be evaluated with a high degree of deference and

without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d

740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Case 3:10-cr-00067-RV-EMT   Document 434   Filed 01/23/17   Page 12 of 30

Page **12** of **30**

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might

have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.  *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).  Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.  Finally, disputes involving purely legal issues

can be resolved by the court without a hearing.

### Grounds One and Two—Failure to Challenge Arrest and Search

In his first two grounds for relief, Defendant contends that counsel was constitutionally ineffective because he did not challenge either the arrest warrant or the search warrant in this case.

Defendant was first taken into custody on May 23, 2010.   On this date, co-defendant Juan Jalomo-Ruiz was the driver of a Nissan pick-up truck transporting Defendant and Torres-Rodriguez to Tego's Barbershop for a meeting with a Source of Information ("SOI").   The meeting pertained to the purported failure of one of Popoca's drug couriers to appear at a designated location with the two kilograms of cocaine the SOI had ordered.   When the vehicle arrived at the barbershop, law enforcement, including marked units, attempted to block the vehicle in.   The occupants tried to flee in their vehicle but ultimately surrendered.   Immigration and Customs Enforcement agents questioned all three men in Spanish and determined that they were illegal aliens.

The criminal complaint that initiated this case was filed on May 25, 2010, and Defendant made an initial appearance in this court on June 3, 2010, after which Christopher Rabby filed a Notice of Appearance.   Defendant first contends that his

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

trial attorney, Mr. Rabby, was ineffective for failing to challenge Special Agent Humphreys' affidavit in support of the arrest warrant (ECF No. 2) because it did not establish probable cause.   Defendant's assertion borders on frivolous. Humphreys' affidavit explained that Popoca had been identified by three people as a source of cocaine supply living in the Foley, Alabama area (ECF No. 2 at 3–5). These individuals included two individual distributors, Charles Anthony Nettles of Pensacola and Anthony Fountain of Panama City, as well as a Confidential Informant ("CI")[1] specifically noted to have provided reliable information in the past.   According to information received from these individuals, law enforcement concluded that Popoca was responsible for the distribution of more than five kilograms of cocaine in the Northern District of Florida.   Law enforcement recorded and consensually monitored telephone conversations between the CI and Popoca, during which the CI ordered kilogram quantities of cocaine.

Additionally, as noted in the affidavit, on May 23, 2010, Popoca's driver Jorge Laureano-Arvayo came to Pensacola to meet the CI and deliver the cocaine (ECF No. 2 at 6).   Upon Laureano-Arvayo's arrival at the predetermined location in the same vehicle that the CI had previously described, law enforcement executed an

---

[1] This is the same person referenced above as the SOI.

investigatory detention.   A narcotics K-9 alerted to the presence of narcotics, although no drugs were located at the time (*id.* at 7).   During the course of the search, law enforcement monitored and recorded calls from Popoca to the CI, which captured Popoca telling the CI that he was calling his driver's telephone to determine his status (*id.*).   The driver's telephone was in the possession of Agent Humphreys who observed the incoming calls from Popoca.   Additional recorded conversations between the CI and Popoca revealed Popoca's concern about his inability to reach the driver, confirmation of the description of the vehicle that Laureano-Arvayo was driving, and Popoca's confidence in the fact that if police searched the vehicle, they would not be able to find the two kilograms of cocaine hidden within it (*id*. at 9).

Eventually, Popoca appeared to become suspicious of the CI, and told the CI that he was coming to Pensacola and that he would "kill anyone who tried to rob his driver" or words to that effect (*id*. at 9).   As a result, law enforcement believed that Popoca could pose a threat to the CI if the meeting were to occur (*id*. at 9–10).   Law enforcement instructed the CI to set up a meeting at a place known to Popoca, and they planned to detain Popoca upon his arrival (*id.* at 10).   When the vehicle in which Popoca was a passenger arrived at the designated location, it attempted to flee when marked and unmarked vehicles with emergency lights activated tried to detain

it.   The vehicle struck two unmarked police vehicles but ultimately the occupants were secured and detained.   Law enforcement's search, pursuant to an inventory of the vehicle, revealed two loaded firearms and additional ammunition not belonging to either weapon (*id*. at 11).   Popoca was the only backseat passenger and had direct access to the rear bed of the truck where the firearms were located through a rear sliding window (*id*.).   After law enforcement determined that the individuals in the truck were illegal aliens, the three men were placed in the custody of Immigration and Customs Enforcement ("ICE").

At the time Special Agent Humphreys executed his affidavit, law enforcement had not yet located any cocaine in Laureano-Arvayo's vehicle, which they knew, based on the recorded conversations between Popoca and the CI, contained at least two kilograms of well-hidden cocaine (ECF No. 2 at 12–13).   Humphreys explained that because of the need to have a complaint in place before the expiration of any ICE detainer, he chose to move forward with the federal criminal complaint prior to the discovery of the hidden location of the cocaine (*id*. at 13).

The facts as set forth in Special Agent Humphreys' affidavit were more than sufficient to establish probable cause to conclude that Popoca was in a conspiracy to distribute more than five kilograms of cocaine.   Such a finding requires only that a

reasonable person would have believed that probable cause existed had he known all of the facts known by the officer.   *See Rankin v. Evans*, 133 F.3d 1425, 1434–35 (11th Cir. 1998).   "Probable cause is judged not with clinical detachment but with a common sense view to the realities of normal life."   *Lorenzo v. City of Tampa*, 259 F. App'x 239, 242 (11th Cir. 2007) (quoting *Rankin,* 133 F.3d at 1436). In this case there was abundant evidence of Popoca's involvement in drug dealing from consensually monitored telephone conversations (*see* ECF No. 2).

The law is well-established that counsel is not ineffective for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to

object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).   Here, Popoca's counsel was not constitutionally ineffective for his decision not to challenge the arrest as lacking in probable cause.

Defendant next contends that trial counsel was ineffective for failing to file a motion to suppress the evidence seized as a result of the stop of Jalomo-Ruiz's vehicle.   He asserts that there was no reason to conduct a stop because, despite Jalomo-Ruiz's attempt to flee from law enforcement, there was no reasonable suspicion to believe a crime had just occurred and that he (Popoca) was armed and dangerous.   Thus, he asserts, counsel was constitutionally ineffective for failing to challenge the stop, search, and seizure that occurred on May 23, 2010.

When counsel's alleged ineffectiveness involves a failure to litigate or competently litigate a Fourth Amendment claim, in order to demonstrate actual

prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.    *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010).    Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded.    *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987).

Defendant's suggestion that counsel was constitutionally ineffective for his failure to challenge law enforcement's stop of the Nissan pick-up truck on the night of May 23, 2010, is without merit.    Counsel could not have made a good faith claim that law enforcement did not have probable cause to stop the vehicle.    Law enforcement had abundant evidence obtained from consensually monitored conversations about Popoca's drug activity and the reason for his meeting with the CI and thus had probable cause to stop the vehicle in which Defendant was riding to detain him, even before it attempted to flee from law enforcement and struck two

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

law enforcement vehicles in the process.   Counsel was not constitutionally ineffective for failing to make a baseless motion.

### Ground Three—Failure to Move for Judgment of Acquittal

Defendant contends that trial counsel was ineffective for failing to move for a judgment of acquittal at the close of the Government's case and renew that motion at the close of all the evidence.   He asserts that the Government did not meet its burden of proof.   Contrary to Defendant's assertion, counsel did move for a judgment of acquittal in both instances with respect to Counts Two and Three, but his request was denied (ECF No. 255 at 151–53, 156–57, 178).   The district court noted that the evidence was sufficient for the jury to find guilt as to all Defendants who had proceeded to trial, if it chose to do so (ECF No. 255 at 156–57). Furthermore, the undersigned notes that the Eleventh Circuit found that Defendant's challenges to the sufficiency of the evidence with respect to Counts Three and Four of the indictment pertaining to possession of the firearm were meritless, and did not even warrant discussion (ECF No. 306).   As to Count One, at the close of the Government's case, instead of specifically moving for a judgment of acquittal, counsel merely stated, "with regards to a motion for judgment of acquittal, I'll let Count One stand on its own" (ECF No. 255 at 151).   It thus appears that counsel

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

determined he had no good faith basis to argue that Defendant was entitled to a judgment of acquittal ("JOA") as to Count One and, based on the evidence noted above, counsel did not perform deficiently in so concluding.   Even so, the district court found, in ruling on the motions for JOA on Count One made on behalf of the other two Defendants, that the evidence was sufficient to go to the jury as to <u>all</u> Defendants on that count, including Defendant Popoca (*see id*. at 153–57)).

Thus, Defendant has not shown that counsel's performance was constitutionally deficient or that he was prejudiced by counsel actions and he is not entitled to relief.

### Ground Four—Failure to Object to Jury Instruction

Defendant next contends counsel was constitutionally ineffective because he failed to object to the district court using a new pattern jury instruction, which resulted in him being convicted of a crime for which he had not been indicted.

The court discussed the jury instructions with counsel at the close of the evidence (ECF No. 255 at 178–81).   The district judge noted that he had been on the pattern jury instruction committee for almost twenty years and noted that new instructions had just been released a few weeks prior which included some

significant changes he wished to carefully review with the attorneys (ECF No. 255 at 178).   None of the attorneys raised any objections to the jury instructions.

On appeal, Popoca argued that the jury instructions, combined with the Government's closing argument, constructively amended the indictment.   The Eleventh Circuit found that the fact that the parties had agreed with the court's instructions meant that the doctrine of "invited error" would apply, such that review is waived even if plain error would result (ECF No. 306 at 6).   This is not the same as "dispatch[ing] [the claim] as meritless," as the Government contends.   The claim Defendant now raises is that counsel was constitutionally ineffective because he failed to challenge the instructions in the district court, and thus failed to properly preserve the issue for appellate review.   Regardless, Defendant has not shown constitutionally deficient performance of counsel and he is not entitled to relief.

The instruction of which Defendant now complains pertained to Count Three of the indictment which charged that he "did knowingly use, carry and possess" a firearm, that is, a Taurus .45 caliber semiautomatic pistol during and in relation to a drug trafficking crime (ECF No. 34 at 3).   The jury was instructed that in order to find Popoca guilty of Count Three it had to unanimously find either "(i) the Defendant used the firearm 'in relation to' the drug trafficking crime(s); (ii) the

Defendant carried the firearm 'in relation to' the drug trafficking crime(s); or (iii) he possessed the firearm 'in furtherance of' the drug trafficking crime(s)" (ECF No. 145 at 16).   With respect to Count Four, the jury was instructed that they had to find that Popoca knowingly possessed a firearm (ECF No. 145 at 17).   Defendant contends that these instructions broadened the bases upon which he could have been convicted because the jury instructions did not specify which of the two firearms recovered by law enforcement he was charged with possessing.

Defendant's argument was squarely rejected by the Eleventh Circuit in *United States v. Dortch*, 696 F.3d 1104, 1112–13 (11th Cir. 2012).   In *Dortch*, the district court instructed the jury that it could find the defendant, a convicted felon, guilty of the charges if the Government proved beyond a reasonable doubt that he possessed a firearm.   The question on appeal was whether the district court committed plain error by constructively amending an indictment that charged possession of two specific kinds of firearms.   The Eleventh Circuit found that there was no controlling precedent such that any alleged error was not obvious or clear under current law. *Dortsch*, 696 F.3d at 1114.   Defendant has not identified any controlling favorable precedent, and the court is aware of none.   As such, Defendant's attorney was not constitutionally ineffective for his failure to object to the instruction.

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

### Grounds Five, Six, and Seven—Failure to Object to PSR

Defendant's next three grounds for relief relate to objections he maintains counsel should have made to the PSR.   Defendant contends that trial counsel failed to properly object to the guideline range and drug quantity, as well as the enhancements pursuant to U.S.S.G. § 3B1.1 for his role in the offense and § 3C1.1 for obstruction of justice (ECF No. 185, PSR ¶¶ 58, 61, 62).

Defendant recognizes that counsel did object to each of the enumerated calculations or enhancements (*see* ECF No. 181, 285).   The undersigned notes that the issue of drug quantity was also raised unsuccessfully on appeal (ECF No. 306 at 5).   Defendant maintains, however, that in making his objections pursuant to Fed. R. Crim. P. 32, counsel should have argued the principles set forth in *United States v. Booker*, 543 U.S. 220 (2005) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Defendant does not specify how he believes the aforementioned cases were applicable to his case, and it is apparent that they are not.   In *Apprendi* the Court held that any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proven beyond a reasonable doubt.   Defendant's sentence did not exceed the

prescribed statutory maximum of life imprisonment on Count One, and there was no basis for an *Apprendi*-based objection to any of the calculations or adjustments.

In *Booker*, the Supreme Court held unconstitutional the mandatory nature of the Sentencing Guidelines.   Again, there is nothing in the record in this case that would suggest a viable objection based on *Booker* error.   The court heard testimony and considered all arguments before ruling on the objections and imposing sentence, specifically noting the advisory nature of the guidelines (ECF No. 285 at 121).

Counsel was not constitutionally ineffective for his failure to make a meritless objection based on *Apprendi* or *Booker,* and Defendant is not entitled to relief on Grounds Five through Seven.

### Ground Eight—Failure to Comport with *Alleyne v. United States*

Defendant contends that his conviction and sentence did not comport with the rule in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), namely, that any fact that increases the statutory mandatory minimum must be submitted to the jury and proven beyond a reasonable doubt.   Defendant maintains that his sentence violates *Alleyne* in three respects.   First he asserts that the jury found him liable for 500 grams of cocaine, and that it was improper for the court to hold him accountable for 37 kilograms.   Second and third, he contests the two-level adjustment for

obstruction of justice pursuant to U.S.S.G. § 3C1.1(b)(1) and the four-level adjustment for his role in the offense pursuant to U.S.S.G. § 3B1.1 absent jury findings on these issues.

For two reasons, Defendant is not entitled to relief.   First, *Alleyne* adopted a new constitutional rule of criminal procedure and it is not retroactively applicable to cases on collateral review.   *See In re Sams,* 830 F.3d 1234, 1241–42 (11th Cir. 2016) (neither the Supreme Court nor the Eleventh Circuit has held that *Alleyne* is retroactively applicable on collateral review); *Jeanty v. Warden, FCI Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014) (holding that *Alleyne* does not apply retroactively such that a prisoner seeking relief can meet the five-part 18 U.S.C. § 2255(e) savings clause test); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014) (noting that *Alleyne* was decided in the context of a direct appeal and the Supreme Court has not expressly declared it to be retroactive on collateral review).

Popoca's claim also fails because even if *Alleyne* were applicable, the rule announced therein would not afford him any relief.   The jury found, by special verdict, that the conspiracy charged in Count One involved at least five kilograms of cocaine (ECF No. 151).   This finding triggered the application of the statutory mandatory minimum of ten years found in 21 U.S.C. § 841(b)(1)(A).   Based on the

jury's finding of 500 grams or more of cocaine with respect to Count Two, Defendant was also subject to a five-year mandatory minimum term of imprisonment, as well as a maximum penalty of forty years.   21 U.S.C. § 841(b)(1)(B).   Popoca's advisory guidelines range fell within the statutorily prescribed ranges on Counts One and Two.   Furthermore, the two guidelines adjustments for obstruction and his role in the offense had no bearing upon on the statutory mandatory minimum.   Defendant's sentence is not constitutionally infirm after *Alleyne,* and he is not entitled to relief.

### Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C.
§ 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues
a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial
of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84
(2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is
also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,
the court may direct the parties to submit arguments on whether a certificate should
issue."   If there is an objection to this recommendation by either party, that party
may bring this argument to the attention of the district judge in the objections
permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.   The amended motion to vacate, set aside, or correct sentence (ECF No.
329) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT

At Pensacola, Florida, this 23<u>rd </u>day of January 2017.


/s/ *Elizabeth M. Timothy*
<u>                                                      </u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:10cr67/RV/EMT; 3:13cv547/RV/EMT